# EXHIBIT 12

1           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
2            Case No. 1:19-cv-00477-CCE-LPA
3

4

     THE ESTATE OF NAJEE ALI     )
5    BAKER, by and through his   )
     Ancillary Administrator,    )
6    Jemel Ali Dixon,          )
                             )
7               Plaintiff,     )
                             )
8          V.               )
                             )
9    WAKE FOREST UNIVERSITY, et )
     al.,                   )
10                             )
               Defendants.    )
11   _____  )
12

13

14

               VIDEOTAPE VIDEOCONFERENCE
15            DE BENE ESSE DEPOSITION
                    OF
16                LUCAS WILLE
17

                MARCH 12, 2021
18          12:54 P.M. - 1:54 P.M. (EST)
19

                MINNESOTA
20

21

22

23

24  Reported by: Michelle Maar, RDR, RMR, FCRR
25

Case 1:19-cv-00477-CCE-LPA  Document 77-13  Filed 05/26/21  Page 2 of 7

1      We'd just have an inflow of people coming,

2   checking them in.  It started to dwindle as time goes on

3   would be my guess, but still have people coming in later.

4   So I was still stationed out there.

5      And from what I've been told, it was a similar

6   party to the other two that I had worked at -- it was just

7   loud, people having fun.

8      Q.   Okay.  Did there come a part, I'm sorry, a point

9   during the evening when people started leaving the party?

10     A.   Yes.

11     Q.   And when people started leaving, where were you

12  located at that point?

13     A.   In the same place I described before -- by the

14  grass right next to the road.

15     Q.   And tell the jury what you recall observing,

16  first, when people started leaving the party.

17     A.   Yeah.  So after, so after people had begun

18  leaving the party, I specifically remember seeing three

19  people, they were kind of smaller and skinny, they started

20  walking out of the party.

21     And I saw a larger male, who was 6 foot 2, more

22  than 200 pounds, was wearing a black, long-sleeved T-shirt

23  and black pants, and he came out following them, and

24  started yelling at them to go get their gun, go get your

25  gun, go get your gun.

1    Q.   Let's talk about that first group for a second.

2         You said they were smaller guys.  Do you recall

3    anything, for example, about their hair?

4    A.   Yeah.  They had dreadlocks or cornrows maybe,

5    whatever they're called, and they were highlighted on the

6    tips.

7    Q.   And you said there was a bigger guy.

8         And tell me again what he looked like and how he

9    was dressed.

10   A.   Sure.  He was 6 foot 2 I would estimate, more

11   than 200 pounds, and he had a black, long-sleeved T-shirt

12   on and black pants as well.

13   Q.   Do you recall if he had anything tied around his

14   waist?

15   A.   I do not recall.

16   Q.   You said the second larger guy was yelling at the

17   smaller guys.  Did the smaller guys yell back or respond?

18   A.   No.

19   Q.   Okay.  We're going to show you what is going to

20   be Defendant's Trial Exhibit Number 2.

21        (Defendant's Exhibit 2 is marked for

22   identification.)

23   BY MR. KING:

24   Q.   First of all, can you tell me what the

25   perspective is, where this camera is in relation to The

1  BY MR. KING:

2      Q.  Going back to the larger guy dressed in all

3  black, a long-sleeved, black T-shirt, who was yelling go

4  get your gun, was there anyone else around when this

5  yelling was going on?

6          MR. FIERBERG:  Objection.  Move to strike.

7  Irrelevant.  Lack of foundation.  Leading.

8          THE WITNESS:  I don't remember anybody

9  specifically, except for my co-worker, Aaron Burroughs.

10  BY MR. KING:

11      Q.  Do you recall if there were any police officers

12  nearby when this person was yelling go get your gun?

13      A.  I don't recall.

14      Q.  And what was your reaction to the person yelling

15  go get your gun?

16      A.  I mean it seemed just like trash talk, like

17  nobody had confirmed that they had a gun or said they were

18  going to get a gun or anything like that.

19      Q.  Well, did you view it as a threat that someone

20  had a gun?

21          MR. FIERBERG:  Objection.  Leading.

22          THE WITNESS:  No.

23  BY MR. KING:

24      Q.  Did you view it as a threat that someone was

25  going to get a gun and bring it back to The Barn?

1       A.    No.

2             MR. FIERBERG:   Objection.   Leading.

3   BY MR. KING:

4       Q.    Did you -- after you heard this larger

5   African-American male, dressed all in black, yell go get

6   your gun, did you go find a police officer and report what

7   you had heard?

8       A.    No.

9             MR. FIERBERG:   Objection.   Lack of foundation.

10  Misrepresents the identification.

11  BY MR. KING:

12      Q.    And why not?

13      A.    For a few reasons -- as I already said, it seemed

14  like trash talk.   And there wasn't a confirmed gun.   Nobody

15  said they had a gun.   Nobody said I'm going to go get my

16  gun.

17            So I mean both parties, both involved parties

18  were leaving the party.

19            And that also, just right after that, there was a

20  gunshot.   And the party had already shut down prior to

21  that, so the situation had changed.

22      Q.    What did the big guy in all black do after he

23  yelled go get your gun at that first group?

24      A.    He followed --

25            MR. FIERBERG:   Objection to the form of the

CERTIFICATE OF REPORTER

1

2  STATE OF NORTH CAROLINA AT LARGE, to wit:

3        I, Michelle Maar, RDR, RMR, FCRR, the officer before

4  whom the foregoing videoconference deposition was taken, do

5  hereby certify that the witness whose testimony appears in

6  the foregoing deposition declared his testimony would be

7  given under penalty of perjury, per stipulation, that the

8  testimony of said witness was reported by me through

9  videoconference technology to the best of my ability, and

10  thereafter reduced to writing;

11        That I am neither counsel for, related to, nor

12  employed by any of the parties to the action in which this

13  deposition was taken, and further that I am not a relative

14  or employee of any attorney or counsel employed by the

15  parties thereto, nor financially or otherwise interested in

16  the outcome of the action.

17        That I am located in Wake County, North Carolina.

18        That the deponent stated he was located in Minnesota.

19

20        _Michelle Maar_

21                    Michelle Maar, Court Reporter

22

23  Notary Public #201628400102

24  My Commission expires October 4, 2021

25