**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 21-1920**

———————————

ESTATE OF NAJEE ALI BAKER, by and through his Ancillary Administrator Jemel Ali Dixon,

               Plaintiff - Appellant,

     v.

WAKE FOREST UNIVERSITY, A North Carolina non-profit institution of higher education,

               Defendant - Appellee,

     and

THE PI OMICRON CHAPTER OF DELTA SIGMA THETA SORORITY, INC., A North Carolina unincorporated association; RHINO SPORTS & ENTERTAINMENT SERVICES, LLC, A North Carolina limited liability corporation; JOHN DOE, Officer of The Wake Forest University Police Department, individually and as an agent of Wake Forest University; JOHN DOE, Security Staff of The Wake Forest University Police Department, individually and as an agent of Wake Forest University; JOHN DOE RHINO SECURITY STAFF 1-2, Individually and as agents and employees of Rhino Sports & Entertainment Services, LLC,

               Defendants.

———————————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:19-cv-00477-CCE-LPA)

———————————

Argued:  March 10, 2022                       Decided:  May 23, 2022

Before GREGORY, Chief Judge, and THACKER and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Jonathon N. Fazzola, THE FIERBERG NATIONAL LAW GROUP, PLLC, Traverse City, Michigan, for Appellant. Robert J. King, III, BROOKS PIERCE, LLP, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Chloe M. Neely, THE FIERBERG NATIONAL LAW GROUP, PLLC, Traverse City, Michigan, for Appellant. Shana L. Fulton, Tanisha Palvia, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP, Greensboro, North Carolina; William K. Davis, Mark A. Jones, BELL, DAVIS & PITT, Winston-Salem, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

This is a tragic case.  Najee Ali Baker ("Baker"), a Winston-Salem State University student, was shot and killed by Jakier Austin ("Austin") after a party at Wake Forest University ("Appellee").  Baker's estate ("Appellant") sued Appellee, claiming Appellee was negligent in hosting the party without sufficient security.

The district court granted Appellee's motion for summary judgment, holding that the shooting was not foreseeable.  For the reasons that follow, we affirm.

I.

A.

Appellee is a private university located in Winston-Salem, North Carolina. Appellee's campus is easily accessible to the general public, and thousands of people, including students, staff, and visitors, are on the campus every day.  Despite the large amount of traffic the campus receives on a daily basis, from the time of the founding of the Winston-Salem campus in 1956 until January 20, 2018, when Baker was shot, there had never been a shooting on campus.

In 2011, Appellee opened an event center on campus called the Barn.[1]  The Barn was located near one of the gatehouses at the edge of campus and was accessible by a single roadway.  During the relevant time period, the Barn was available for student events. Appellee's chapters of National Pan-Hellenic Council ("NPHC") fraternities and sororities did not have dedicated event spaces on campus, so they would use the Barn for social

_____

[1] The Barn has since been renamed the University Activity Center.

3

events.  These events were referred to as Barn parties, and they were also open to students of nearby universities.  In fact, the majority of attendees at Barn parties attended other universities.  Barn parties were often large events with hundreds of students in attendance.

Over time, Barn parties were the site of several incidents which required security intervention.  Most of these incidents involved fistfights and/or pushing and shoving.  From the time of the Barn's opening in 2011 until Baker's murder in 2018, there were only two incidents at the Barn which required medical attention, and both occurred several years prior to the incident involving Baker.  In the first such incident, in 2012, a Barn party attendee was beaten unconscious just outside the Barn's entrance after Wake Forest Police Department ("WFPD") officers halted the Barn party.  In the second incident, in 2013, a woman was trampled in a crowd rush caused by people fleeing the scene of an altercation after a Barn party.  The victim of the crowd rush was interviewed by a WFPD officer.  In that interview, the victim claimed that a man had suffered a "gashed head" and had a "gun pulled on him" at the party.  J.A. 571[2]

B.

Security for events at the Barn evolved over time.  Initially, WFPD officers provided security for Barn events.  Generally, events would have up to 16 police officers posted both inside and outside the Barn.  However, the police presence created tension with Appellee's students, who did not want to be so heavily policed.

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

In 2014, Appellee hired Dr. Adam Goldstein ("Dr. Goldstein") as the Dean of Students. One of Dr. Goldstein's mandates was to formulate a more effective security plan for Barn events. He worked collaboratively with student organizations, the WFPD, and other campus stakeholders to develop the new security plan, which was referred to as the Dean of Students plan (the "DOS plan"). The DOS plan, which was implemented in 2015, transferred most of the event management duties from the WFPD to student employees called Event Resource Managers ("ERMs"). The DOS plan also reduced the police presence at Barn parties from 16 officers in and around the Barn to zero officers inside the Barn and one officer stationed outside, with others nearby if assistance was necessary. Appellee hired a private security company, Rhino Sports & Entertainment Services ("Rhino"), to assume WFPD's security duties. Unlike the WFPD, Rhino was "hands off" -- meaning the Rhino security officers were not allowed to physically intervene to stop fights. Because the entrance to the Barn had been a point of conflict in previous years, the DOS plan also instituted digital ticketing for events in order to reduce the waiting time to enter the Barn.

In the period between the Barn's opening in 2011 and the implementation of the DOS plan in 2015, five violent incidents occurred in the vicinity of the Barn. Between the implementation of the DOS plan in 2015 and the shooting of Baker in 2018, three violent incidents occurred. Further, as noted, the two incidents which were severe enough to warrant medical attention occurred before the implementation of the DOS plan.

5

C.

On the evening of January 19, 2018, NPHC sorority Delta Sigma Theta hosted a party in the Barn. Baker, a student at nearby Winston-Salem State University, attended. Non-students Austin and two of his friends, Malik Smith ("Smith") and Jadakiss Hall, also attended. Despite no longer being a student, Austin had a valid student identification card from Winston-Salem State University.

At some point, Baker and Smith got into a verbal altercation inside the Barn that escalated to pushing and shoving. After the altercation, Austin's group left the Barn. Baker left the Barn a couple of minutes later. Lucas Wille ("Wille"), an ERM stationed near the entrance of the Barn, heard either Baker, Austin, or one of Austin's friends yell, "Go get your gun." J.A. 870. Moments later, on the roadway next to the Barn, Austin shot and killed Baker.

D.

Appellant sued Appellee in federal district court, alleging that Appellee was negligent in staffing and event management for Barn parties. Appellant claimed that the history of altercations at the Barn during parties should have put Appellee on notice that it needed stronger security. Instead, according to Appellant, Appellee weakened security by implementing the DOS plan, which fostered an environment that allowed the shooting of Baker to occur.

Appellee moved for summary judgment on the bases that the shooting was not foreseeable or, alternatively, that Appellant could not demonstrate that Appellee's actions

6

were the cause of the shooting.  The district court granted Appellee's summary judgment

motion, holding that the shooting was unforeseeable as a matter of law.

## II.

We review a grant of a motion for summary judgment de novo.  *Stanton v. Elliott*,

25 F.4th 227, 234 (4th Cir. 2022).  Summary judgment is properly granted if there are no

genuine disputes of material fact, and the movant is entitled to judgment as a matter of law.

*Id.*

## III.

## A.

In analyzing the issue presented in this diversity action, we apply the substantive

law of North Carolina.  *S. Power Co. v. Cleveland Cnty.*, 24 F.4th 258, 262 (4th Cir. 2022).

Pursuant to North Carolina law, in order to prevail on a negligence action, a plaintiff must

prove "that the defendant owed the plaintiff a legal duty, that the defendant breached that

duty, and that the plaintiff's injury was proximately caused by the breach."  *Martishius v.

Carolco Studios, Inc.*, 562 S.E.2d 887, 892 (N.C. 2002).

## 1.

The first step, then, in considering liability in a negligence action is to determine

whether or not a duty exists between the parties.  A duty can arise between the parties based

on Appellee's status as a landowner.  *See Nelson v. Freeland*, 507 S.E.2d 882, 892 (N.C.

1998).  Pursuant to North Carolina law, landowners have a duty to non-trespassers coming

onto their property to act as a reasonable person would under the circumstances.  *Id.*  These

duties are not limitless, however, and a landowner is not the insurer of its premises.  *Id.*

7

One such limitation on this duty is that a landowner is generally not responsible for intentional criminal acts committed by third parties on its land. *See Foster v. Winston-Salem Joint Venture*, 281 S.E.2d 36, 38 (N.C. 1981). However, the landowner has a duty to take reasonable steps to protect non-trespassers against the reasonably foreseeable criminal acts of third parties. *Id.* at 39.

"The most probative evidence on the question of whether a criminal act was foreseeable is evidence of prior criminal activity. . .." *Connelly v. Family Inns of Am.*, 540 S.E.2d 38, 41 (N.C. Ct. App. 2000). North Carolina courts consider three factors to determine whether prior criminal activity gives rise to a duty: (1) location of criminal acts; (2) type of criminal acts; and (3) quantity of criminal acts. *See id.* The more incidents of prior similar criminal acts in a particular location, the more likely a duty attaches. *Id.* In contrast, a lack of similar criminal incidents is fatal to a negligence claim for want of foreseeability. *See Brown v. N. C. Wesleyan Coll., Inc.*, 309 S.E.2d 701, 703 (N.C. Ct. App. 1983) (holding that scattered, mostly unrelated incidents over several years were insufficient to give notice to university that it was reasonably foreseeable that a kidnapping/murder would occur).

2.

The parties dispute the proper scope of the location to be considered in the foreseeability analysis here. Appellee argues that we should consider the general safety of the campus as a whole. Appellant, on the other hand, argues that we should restrict our analysis to the Barn and the area extending to the nearby roadway where Baker was shot. Ultimately, the result is the same regardless of which location is considered. Even

8

assuming that Appellant's proposed location -- the Barn and its immediate surroundings -- is the proper scope, no prior similar criminal attacks occurred there. In fact, prior to the shooting of Baker, not only was there never a shooting connected to Barn events, there was never a shooting on campus at all.

3.

Next, the second and third factors (the nature and the quantity of prior criminal activity) overlap in this case because Appellant did not provide evidence of any similar incidents that pre-dated the shooting of Baker at the Barn. The lack of any similar criminal acts is dispositive of Appellant's claim. North Carolina courts determine the similarity of prior criminal incidents through the lens of the crime committed. *See Shepard v. Drucker & Falk*, 306 S.E.2d 199, 202 (N.C. Ct. App. 1983) (distinguishing assaults after breaking into an apartment from an incident involving an assault in a parking lot and holding the assaults inside the apartment were not sufficiently similar to make parking lot assault foreseeable). Though the prior crimes need not be exactly alike, they must have similarities. *See Liller v. Quick Stop Food Mart Inc.*, 507 S.E.2d 602, 606 (N.C. Ct. App. 1998) (reasoning that while property crimes are different in kind to a shooting during an attempted robbery, violent assaults and armed robberies were similar to the incident at hand).

Here, the relevant crime was a shooting. In the seven years between the opening of the Barn and the shooting of Baker, there were eight violent incidents. None involved a shooting. Five of these incidents involved pushing and shoving or a fistfight, though one of the pushing and shoving incidents did involve a crowd rush of students fleeing the scene,

9

which caused a student to fall and be trampled.  Of the remaining three incidents, only one -- a 2013 incident where a student was beaten unconscious -- required medical attention, and it occurred prior to the implementation of the DOS plan.  In 2016, after the implementation of the DOS plan, Rhino security officers witnessed several fights inside the Barn and returned to their office with bloody shirts, but apparently no injuries were reported.  And in  February 2017, an ERM was punched while checking tickets at the entrance to the Barn.  Notably, the most serious of these incidents -- the 2013 incident during which a student was beaten unconscious during a fight -- did not involve a weapon. In fact, none of the incidents at the Barn involved a firearm.

Fistfights at college parties are simply different in kind to shootings, and therefore do not aid Appellant in the foreseeability analysis.  The case at hand is different than *Liller*, in which armed robberies were held to give rise to the foreseeability of a shooting because a shooting is a common result of an armed robbery.  *Liller* 507 S.E.2d at 606.  As a result, the quality and quantity of prior crimes in the vicinity of the Barn leading up to the shooting in this case were insufficient to make it foreseeable that a shooting would occur.

B.

1.

Nonetheless, Appellant argues that even if a shooting at the Barn was not generally foreseeable, the particular events of the night of January 19 and the early morning of January 20 themselves gave rise to a duty because the shooting became foreseeable through actual notice of an imminent risk of harm.  North Carolina law recognizes a very narrow context in which a criminal act can become foreseeable in these circumstances.  *See*

10

*Abernethy* ex rel. *Abernethy v. Spartan Food Sys., Inc.*, 404 S.E.2d 710, 712 (N.C. Ct. App. 1991).

Under this premise, in *Abernethy*, a restaurant was held liable for a stabbing that occurred on its premises.  In that case, two men entered the restaurant and acted aggressively toward the patrons and employees and shouted racial slurs.  *Abernethy*, 404 S.E.2d at 712.  At one point, one of the men directly told a restaurant employee that he was going to get a knife.  *See id.*  The men then briefly left the store and ran across the street to a motel.  When the men returned to the restaurant, one of them had a knife.  The men fought with restaurant patrons on the premises before one of them stabbed one of the patrons.  *Id.* at 712–13.

Despite the obvious risk the men posed during the course of the incident, the store manager refused multiple requests to call police.  *Abernethy*, 404 S.E.2d at 712.  Under these circumstances, the North Carolina Court of Appeals held that the restaurant had actual notice that the men posed an imminent threat to the people at the restaurant, and therefore, the restaurant had a reasonable duty to protect against the harm posed.  *Id.* at 713.

2.

Here, Appellant argues the "Go get your gun" exclamation served as actual notice that Austin would actually get his gun and shoot Baker.  But the mere invocation of the possibility of a gun, standing alone, does not provide actual notice of an imminent shooting. Unlike in *Abernethy*, here, the source of the threat was not identified.  ERM Wille, the only witness who heard the "Go get your gun" statement, could not identify who made the

11

statement or the intended recipient of the statement.  Further, ERM Wille did not believe

the threat to be a literal threat, but instead thought the statement "seemed like trash talk,

like nobody had confirmed that they had a gun or said they were going to get a gun or

anything like that."  J.A. 260.  A threat between two unknown people that does not appear

to be a literal threat is not reasonably foreseeable or imminent.   Therefore, the facts of this

case do not support a holding that the shooting became foreseeable through actual notice.

In summary, Appellant did not establish Appellee's duty to take reasonable steps to

prevent the shooting that occurred.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

12